UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN ZIEL,                                        Case No. 21-11929

     Plaintiff,                               Stephanie Dawkins Davis
v.                                                 United States District Judge

ROMEO COMMUNITY SCHOOLS, *et al*.,

     Defendants.
_____ /

## ORDER DENYING PLAINTIFF'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 5) AND STAYING ACTION

## I.  INTRODUCTION

On August 19, 2021, plaintiff, Susan Ziel, filed a Complaint alleging First Amendment retaliation based on her freedom of speech (Count I) and freedom of association (Count II) against Romeo Community Schools (RCS), the RCS Board of Education, the RCS superintendent, Todd Robinson, Julia Butler, the RCS Director of Employee Services, and the individual members of the RCS Board of Education.  (ECF No. 1).  That same day, she also filed an *ex parte* motion for a temporary restraining order.  (ECF No. 5).  The court held a telephonic status conference on August 20, 2021 during which it set a briefing schedule and hearing

date for Ziel's motion for injunctive relief.  (ECF No. 6).[1]  In her motion, Ziel asks

this court for a temporary restraining order preventing the Board from adopting

draft tenure charges terminating her employment and for a preliminary injunction

requiring defendants to restore her to her position as a teacher at Romeo Middle

School during the pendency of these proceedings.  (*Id.* at PageID.70).  For the

reasons set forth in this opinion, the court has determined that it must abstain

pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) and stay proceedings in this

matter while the administrative process under the Michigan Tenure Act is pending.

## II.    FACTUAL BACKGROUND

Ziel has taught middle school for RCS for over twenty-five years.  She is a

union member and President of the Romeo Education Association, a local

teachers' union ("Union").  (ECF No. 1, Compl. ¶¶ 45-47).  During the COVID-19

Pandemic, Ziel learned that an organization, known as Moms for Liberty ("M4L")

had attended multiple school board meetings throughout school districts in

Macomb County.  M4L used disruption and rowdiness to protest issues, such as

---

[1] Plaintiff sought an *ex parte* temporary restraining order.  As explained at the telephonic conference, Ziel's motion did not comply with Federal Rule of Civil Procedure 65(b), which requires the movant's attorney to certify in writing any efforts made to give notice and why notice should be not required, and which also requires the motion to be supported by specific facts showing that irreparable injury will be sustained, set forth in an affidavit or verified complaint.  Here, plaintiff's attorney certified that he provided copies of the subject filings to defense counsel and "certified" that irreparable harm would result if an order is not issued.  But the rule requires that the factual support for such harm be set forth in a verified complaint or affidavit – neither of which were filed in this case.  As such, issuance of an order without notice would not have been proper.

COVID-19 vaccines, mask requirements, and critical race theory, at public school

board meetings.  Ziel was aware that M4L frequently blames teachers' unions for

school districts' mask mandates, vaccine requirements, and "progressive"

curriculums.  Around May 12, 2021, Ziel learned that M4L members had attended

the Board's May 10, 2021 meeting.  (ECF No. 1, Compl. ¶¶ 52-53).

During the May 10, 2021 Board meeting, members of the public shouted at

Board members, and accused the Board of failing students and being evil.  These

individuals publicly commented to the Board that COVID-19 was not a virus and

that masks do not prevent the spread of COVID-19.  (ECF No. 1, Compl. ¶ 54).

Ziel is the administrator of a private Facebook page, named "Romeo EA."  Only

Union members have access to the Facebook page.  There are approximately 200

members who have requested and have access to the Romeo EA Facebook page.

(ECF No. 1, Compl. ¶ 55).  On May 12, 2021, in response to the public comments

made at the May 10, 2021 Board meeting, Ziel authored and posted the following

on the Romeo EA's Facebook page:

> This is how I picture the next board meeting between the
> Board & the idiots that turned the meeting into a [cartoon
> emoji/pile of poo] show. A group called 'Moms of
> liberty' showed up to stir up trouble. Apparently they
> were rude and mistook the meeting for a Jerry Springer
> show. Anti mask (sic) & anti vaccine (sic) & anti testing
> (sic) for sports. The trifecta of stink'n think'n. They are a
> virus themselves.

(ECF No. 1, Compl. ¶ 56; ECF No. 5-1).

On May 16, 2021, defendants, through defendant Robinson and defendant Julia Butler, suspended Ziel pending an investigation.  Butler advised Ziel that the reasons for the suspension were (1) her May 12, 2021 Facebook post on the Romeo EA page, and (2) because she spoke to the Associated Press, and her name appeared in the May 12, 2021 article.  (ECF No. 1, Compl. ¶¶ 59-60).

On June 23, 2021, defendants, through their attorneys, conducted an investigatory interview with Ziel which covered the Facebook posting as well as a number of other topics.  (ECF No. 1, Compl. ¶¶ 61-63).  On July 26, 2021, at a Special Meeting, the Board authorized Robinson to pursue Ziel's termination through tenure charges.  (ECF No. 1, Compl. ¶ 65).  On August 3, 2021, defendants, through their attorney, notified Ziel that the Board would proceed with Ziel's termination by filing a tenure charge under Michigan's Teacher Tenure Act, Mich. Comp. Laws § 38.71, *et. seq*.  (ECF No. 1, Compl. ¶ 66).  Defendants advised Ziel that the Board would vote on her termination at the next Board meeting.  Defendants provided Ziel with a copy of the tenure charge.  In the tenure charge, defendants, through Robinson, told Ziel he "recommend[s] that the Board take action to dismiss [her] for unprofessional conduct in using abusive and insulting language in a social media post."  The tenure charge identifies Ziel's May 12, 2021 Facebook post as the sole basis for recommending her termination.  On August 5, 2021, defendants barred Ziel from entering RCS property.  (ECF No. 1,

4

Compl. ¶¶ 66-71; ECF No. 5-3, Defendants' Tenure Charge).  On August 10, 2021, defendants, through their attorney, advised Ziel that they would terminate her through the approval of the tenure charge against her at its next meeting on August 23, 2021.[2]  (ECF No. 1, Compl. ¶ 72).

## III.  DISCUSSION

Among other things, defendants argue that this court should abstain from issuing injunctive relief under *Younger v. Harris*, 401 U.S. 37 (1971).[3]  The court agrees.  Under *Younger*, federal courts decline to interfere with pending state proceedings unless extraordinary circumstances are present.  *Id.* at 45.  "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity."  *Tobias v. State of Mich.*, 2018 WL 3434344, at *4 (E.D. Mich. July 17, 2018) (quoting *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017) (citing *Younger*, 401 U.S. at 44)).  Although *Younger* addressed state criminal proceedings, the Supreme Court "has also approved application of *Younger* abstention to situations involving state administrative proceedings."  *Watts v. Burkhart*, 854 F.2d 839, 845 (6th Cir. 1988) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,

---

[2] Defendants agreed to reschedule the Board meeting for September 13, 2021, so the court could conduct the hearing and resolve the motion before the meeting was held.

[3] To the extent that either party addresses whether exhaustion of administrative remedies is required, this consideration is not a part of the calculus for purposes of *Younger* abstention, where the focus of the inquiry is the ongoing nature of the state proceedings, as discussed below.

457 U.S. 423 (1982)).  There is little dispute that a disciplinary proceeding under the Michigan Tenure Act is a civil enforcement proceeding akin to a criminal proceeding.  *See e.g.*, *Doe v. University of Kentucky*, 860 F.3d 365 (6th Cir. 2017) (University student disciplinary proceeding found to be "akin to a criminal prosecution" for purposes of *Younger* abstention even though it lacked the formalities of a trial where the plaintiff could submit questions to the hearing officer and counsel could be present.).  The Michigan Tenure Act provides that if a school board decides to proceed with the charges against a teacher, the teacher may file a claim of appeal with the tenure commission.  An administrative law judge then conducts a hearing on the appeal at which both the teacher and the board may be represented by counsel under the Michigan Administrative Procedures Act.  The teacher has the option to make the hearing public or private.  Additionally, testimony will be taken under oath and the administrative law judge must subpoena witnesses and documentary evidence at the request of the board or the teacher.  If a witness fails to appear, the party requesting the witness can petition the state circuit court for an order requiring compliance, and a witness's failure to obey such an order is punishable by the court as contempt.  After hearing the evidence presented, the ALJ then issues a preliminary decision, to which either side may file exceptions.  The tenure commission reviews the record and exceptions and may adopt, modify, or reverse the preliminary decision, and then issues a final decision.

Finally, a party aggrieved by the final decision of the tenure commission may appeal to the Michigan Court of Appeals.  Mich. Comp. Laws § 38.104.  Based on the foregoing procedures, the proceeding under the Michigan Tenure Act is "akin to a criminal proceeding" and thus, *Younger* abstention may be applicable.

"A district court may abstain under the *Younger* doctrine if three conditions exist: there are state proceedings that are (1) currently pending; (2) involve an important state interest; and (3) will provide the federal plaintiff with an adequate opportunity to raise his or her constitutional claims." *Nimer v. Litchfield Twp. Bd. of Tr.*, 707 F.3d 699, 701 (6th Cir. 2013).  "[A]bsent 'bad faith, harassment or any other unusual circumstance,' federal-court abstention is appropriate where a plaintiff invokes federal jurisdiction as a basis for obtaining injunctive relief against state-court criminal proceedings." *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (quoting *Younger*, 401 U.S. at 53-54).[4]

Ziel argues that *Younger* abstention does not apply because there are not state proceedings currently pending and thus, the first prong is not satisfied.  Ziel also suggests that because no such proceeding is pending, she has not had the opportunity to raise her constitutional issues before the state administrative tribunal

---

[4] Ziel does not argue that bad faith, harassment, or other unusual circumstances are applicable here.

and thus, the third prong is not satisfied.  Ziel offers no argument to dispute that

the second prong – the involvement of an important state interest – is satisfied.

More specifically, as to the first prong of *Younger*, Ziel argues that the

tenure proceeding has not begun because the Board has not yet decided to move

forward with the charges.  In other words, Ziel maintains that the issuance of the

charges does not commence the tenure proceeding, though she has provided no

authority supporting this conclusion.  For *Younger* abstention purposes, state law

controls the determination of when the state proceedings began.  *James v.*

*Hampton*, 513 Fed. Appx. 471, 474 (6th Cir. 2013) (citing *O'Neill v. Coughlan*,

511 F.3d 638, 643 (6th Cir. 2008)).  The court was unable to find any Michigan

cases discussing this precise issue under the Tenure Act.  Yet, the charges required

by Mich. Comp. Laws § 38.102 have been issued and, under Michigan law, such

charges are a mandatory part of the process, which suggests that the charges are the

event that commences the tenure act proceeding.  For example, in *Simon v.*

*Gibralter School District*, 52 Mich. App. 642 (1974), the Michigan Court of

Appeals rejected a claim that the plaintiff was denied due process because the

board did not independently decide to proceed on the charges.  Rather, because the

teacher received a copy of the written charges, which were signed by the

superintendent, filed with the secretary, and served on the board, as required by

statute, she was given notice and an opportunity to be heard.  This is so because the

statute does not limit the board's discretion with respect to the decision to proceed informally. *Id*. at 646-647. That the board may act informally in deciding to proceed on the charges, suggests to this court that the tenure proceeding is commenced by the more formal and statutorily required filing of the charges. Indeed, the Michigan Court of Appeals has emphasized the mandatory nature of the filing of written charges, sustaining the conclusion of the tenure commission that a teacher was improperly suspended and discharged based on defective charges, which were not signed by the party asserting the charges and which contained general and conclusory allegations, insufficient to provide the notice intended by the statutory provision. *Lawson v. Wayne Community School District*, 63 Mich. App. 57, 59-60 (1975). The mandatory nature of the charge requirement, along with the strict compliance necessary to even sustain any action taken on a charge, stands in stark contrast to the informality that may accompany the board's decision to proceed on the charges. This suggests to the court that the "proceeding" contemplated by the Michigan Tenure Act begins with the filing of formal charges and not the board's decision to proceed on such charges.

This conclusion is supported by decisions made in analogous contexts. For example, in *James v. Hampton*, the court decided that a proceeding commenced for purposes of *Younger* abstention when the Judicial Tenure Commission filed a formal complaint against the judge, and not when the hearing on the merits of the

complaint began.  *Id*. at 474-475.  Thus, the court found that the state proceeding was "ongoing" when the federal court complaint was filed, even though the hearing had not yet commenced, because the charges had been filed.  Here, there is no dispute the charges were filed under the Tenure Act before this lawsuit was filed.  Accordingly, the court concludes that the tenure proceeding was "ongoing" when Ziel filed her complaint in this court and the first prong of the *Younger* abstention doctrine is satisfied.

As to the third prong, the court is not persuaded that because it remains to be seen whether Ziel will assert her constitutional claims in the administrative proceeding, she does not have *the opportunity* to so raise those claims, which is all that is required by *Younger*.  An opportunity to raise constitutional claims means that, "[u]nless state law clearly bars the imposition of the constitutional claim," abstention is appropriate. *James v. Hampton*, 513 Fed. Appx. at 475 (quoting *Moore v. Sims*, 442 U.S. 415, 425 (1979)).  Ziel has not cited any case law or statutory provision suggesting that she is barred from seeking redress on her constitutional claims during the tenure proceeding, which is her burden.  *Id*. at 475 (citing *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 14 (1987)).  "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Pennzoil Co.*, 481 U.S.

at 15. "Thus the relevant question is not whether [the plaintiff] raised her claims in the state proceeding, but whether state law clearly foreclosed her from so doing at the time she filed this lawsuit." *James v. Hampton*, 513 Fed. Appx. at 475. Ziel has not come forward with any authority suggesting she is prohibited from doing so and accordingly, the third prong of *Younger* is satisfied.

As a result, this court concludes that all three prongs of *Younger* are satisfied and it will abstain from interfering with Ziel's pending state administrative proceeding.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff's motion for injunctive relief is **DENIED** and this matter is **STAYED**,[5] pending resolution of plaintiff's claims in the state proceedings.

**IT IS SO ORDERED**.

Date: September 9, 2021                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States District Judge

---

[5] As explained in *James v. Hampton*, the court does not have discretion to abstain from exercising jurisdiction over an action at law pursuant to *Younger*. That is, dismissal based on *Younger* abstention is only appropriate when a plaintiff seeks only injunctive relief. *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) ("In the context of a complaint seeking 'both equitable [relief] and money damages,' as in this case, 'a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law.'"). Here, Ziel's complaint seeks money damages and accordingly"[t]he District Court should stay [the] federal lawsuit to protect against the possibility that [Appellant] could be deprived of the opportunity to present the merits of her damages claims in state court." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998).

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 9, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
in the absence of T. Hallwood
(810) 341-9764